Jimmy Cleveland BURGETT, Appellant,

v.

The STATE of Texas, State.

No. 2–93–053–CR.

Court of Appeals of Texas, Fort Worth.

Nov. 9, 1993.

Rehearing Overruled Dec. 21, 1993.

James A. Rasmussen, Wichita Falls, for appellant.

Tim Cole, Dist. Atty., Montague, for appellee.

Before LATTIMORE, HICKS and FARRAR, JJ.

## OPINION

FARRAR, Justice.

Appellant, Jimmy Cleveland Burgett, appeals from his conviction of delivery of amphetamines. TEX.HEALTH & SAFETY CODE ANN. §§ 481.103(a)(3), 481.113 (Vernon 1992).

He was sentenced by a jury to an enhanced punishment of forty-years confinement.

We affirm.

Appellant brings four points of error: 1–2) he was denied his constitutional right to a speedy trial; 3) he was unconstitutionally denied notice of potential enhancement of punishment; 4) the original indictment was never technically presented because the judge who received it had not taken the oath of office, and the amended indictment superseded the original indictment and was time barred by the statute of limitations.

On April 26, 1987, appellant, who was on parole for a previous delivery conviction, sold amphetamines to an undercover police officer. He was indicted for delivery of a controlled substance on May 18, 1987. The indictment alleged one prior felony conviction for enhancement purposes. Appellant disappeared shortly after the indictment was handed down.

■ In April 1992, appellant was located in Gadsden County, Alabama where he had taken an assumed name and had been arrested for dealing amphetamines. He was returned to Clay County on May 2, 1992. He was arraigned May 6, 1992, and trial was set for September 29, 1992. Appellant filed an application for writ of habeas corpus on Sixth Amendment speedy trial grounds. The trial court rejected this contention, August 19, 1992, and appellant perfected an appeal to this court which was later dismissed as premature. *Ex parte Burgett*, 850 S.W.2d 267 (Tex.App.—Fort Worth 1993, pet. dism'd). The issue is now properly before us for our consideration. In points of error one and two, appellant contends he was denied his constitutional right to a speedy trial. U.S. CONST. art. VI; TEX. CONST. art. 1, § 10; TEX.CODE CRIM.PROC.ANN. art. 1.05 (Vernon 1977). The issue of whether an accused has been denied his constitutional right to a speedy trial is determined by using the balancing test enunciated in *Barker v. Wingo*. This test considers four factors: 1) the length of delay; 2) the reason for delay; 3) the defendant's assertion of his right; and 4) prejudice resulting from the delay. *Barker v. Wingo*, 407 U.S. 514, 531, 92 S.Ct. 2182,

2192, 33 L.Ed.2d 101, 117 (1972); *Hull v. State,* 699 S.W.2d 220 (Tex.Crim.App.1985).

■ Appellant contends the five-year delay between the indictment and arrest and the six-month delay between his arrest and trial violated his right to a speedy trial. The length of delay is the threshold issue and is measured from the time the accused is formally charged or arrested. *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The delay must be long enough to be "presumptively prejudicial." *United States v. Loud Hawk,* 474 U.S. 302, 314, 106 S.Ct. 648, 655, 88 L.Ed.2d 640, 653 (1986). A five-year delay is sufficient to undertake speedy trial consideration, but does not automatically constitute a violation of the right. *Hull,* 699 S.W.2d at 221.

■ The reasons for the delay should be considered. *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. The State has some burden to justify or explain the delay. *State v. Hernandez,* 830 S.W.2d 631, 635 (Tex.App.—San Antonio 1992, no pet.); *Green v. State,* 760 S.W.2d 50, 52 (Tex. App.—El Paso 1988, no pet.). Deliberate attempts to delay or hamper the defense should be weighed heavily against the prosecution. *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. Delay caused by acts of the accused which are beyond the control of the prosecution should not weigh against the State. *U.S. v. Smith,* 534 F.2d 74 (5th Cir.1976), *cert. denied,* 429 U.S. 1100, 97 S.Ct. 1122, 51 L.Ed.2d 549. In fact, a defendant may be disentitled to the speedy trial safeguard when he has or shares responsibility. *Dickey v. Florida,* 398 U.S. 30, 48, 90 S.Ct. 1564, 1574, 26 L.Ed.2d 26, 38 (1970). The accused cannot sustain a speedy trial claim when the delay is a result of evading apprehension, making dilatory pleadings or motions, failing to object when a continuance is granted to the State, or his incompetence to stand trial. *Id.*

The State asserts that while it hoped to catch other violators through appellant it did not deliberately delay appellant's prosecution after the indictment was handed down. On the contrary, the State sought to arrest him within thirty days of the offense and then conducted a systematic search for defendant which finally resulted in his return to Texas for trial. This search included visiting appellant's known residence, contacting known associates, the subpoena of appellant's wife's phone records, staking out her place of employment, checking vehicle registration records of all fifty states, and entering appellant's name as a fugitive into the Texas and National crime information systems. Appellant was finally located by an FBI agent in April 1992. Prior to trial, appellant stipulated that he had moved to Alabama, changed his named, engaged in and was arrested for amphetamine dealing. The delay was clearly caused by difficulty in locating appellant, not by procrastination. *Wooten v. State,* 735 S.W.2d 574, 576 (Tex.App.—Texarkana 1987, no pet.). This is sufficient justification. *Hernandez,* 830 S.W.2d at 635. Further, it was appellant's own elusive conduct that delayed his apprehension and trial, and this alone disentitles him to the speedy trial safeguard. *Dickey,* 398 U.S. at 48, 90 S.Ct. at 1574, 26 L.Ed.2d at 38. At the very least, it should weigh heavily against him. *Doggett v. United States,* —— U.S. ——, ——, 112 S.Ct. 2686, 2693, 120 L.Ed.2d 520, 527–28 (1992).

Appellant also contends that his six-month incarceration prior to his trial was excessive. Appellant was formally arraigned and counsel was appointed on May 6, 1992. At the arraignment, appellant was informed that a jury probably would not be called until September. Trial was set for September 29, 1992. Although this delay is substantial, it is not so great as to mandate dismissal. *U.S. v. Taylor,* 487 U.S. 326, 341, 108 S.Ct. 2413, 2422, 101 L.Ed.2d 297, 313 (1988).

On September 16, 1992, the State announced ready, and new counsel was appointed at appellant's request. On September 28, 1992, appellant moved for continuance, and trial was reset for November 10, 1992. While appellant is entitled to pursue all appropriate means to effect his defense, continuances granted on his motion will not be counted against the State. *Dickey,* 398 U.S. at 48, 90 S.Ct. at 1574, 26 L.Ed.2d at 38.

■ The extent to which appellant asserted his right to speedy trial must also be

examined. *Loud Hawk,* 474 U.S. at 314, 106 S.Ct. at 655, 88 L.Ed.2d at 654. Appellant's assertions are entitled to strong evidentiary weight in determining whether his rights have been denied. *Id.* These assertions, however, must be viewed in light of appellant's other conduct. *Id.* at 314, 106 S.Ct. at 656, 88 L.Ed.2d at 654. The invocation of the right to a speedy trial will be weighed against a defendant who knew of an indictment and purposefully left the state to avoid prosecution. *Doggett,* —— U.S. at ——, 112 S.Ct. at 2691, 120 L.Ed.2d at 529. The trial court is in the best position to judge the credibility of the evidence, and we will give the court considerable deference. *Id.*

Appellant raised his speedy-trial assertion on three occasions prior to trial, one of which was appealed to this court. He claims he had no knowledge of the indictment. Yet, shortly after the indictment was handed down, appellant left his residence, never to return. Further, appellant was on parole at the time of the indictment, but he can offer no evidence that he reported to his parole officer during 1987 or subsequent years which would refute the State's contention that he was evading apprehension. Appellant was finally located in another jurisdiction, where he had been living under an assumed name for at least two and one-half years and had resumed his trade in amphetamines. From these unrefuted facts, it was reasonable for the trial court to deny appellant's speedy trial motion.

■ Finally we must consider whether prejudice resulted from the delay. Trial delay can be harmful in three ways: 1) pretrial incarceration may be oppressive; 2) the accused may be unduly subjected to anxiety and concern; 3) the accused's defense may be impaired by loss of exculpatory evidence and dimming memories. *Doggett,* —— U.S. at ——, 112 S.Ct. at 2692, 120 L.Ed.2d at 529–30 (*citing Barker,* 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118).

Appellant claims he was harmed from anxiety experienced during his incarceration as evidenced by his frequent pro se motions. We give little weight to this contention because appellant's litigation tactics contributed significantly to the delay in trial. *Loud*

*Hawk,* 474 U.S. at 314–15, 106 S.Ct. at 656, 88 L.Ed.2d at 654.

Appellant also complains he would have been able to prove that he knew the complaining witness was a state undercover agent had a timely arrest been made. The delay also precluded him from locating key witnesses, and those witnesses which he did locate no longer recalled with sufficient detail the events five years before. Impairment of one's defense is the most difficult form of prejudice to prove because time's erosion of exculpatory evidence can rarely be shown. *Doggett,* —— U.S. at ——, 112 S.Ct. at 2692–93, 120 L.Ed.2d at 530–31. It is also the most serious because the inability of a defendant to adequately prepare his case skews the fairness of the trial. *Id.* However, actual proof of prejudice is not required, only some showing that the delay was prejudicial. *Phillips v. State,* 650 S.W.2d 396, 401 (Tex. Crim.App. [Panel Op.] 1983). Time can damage either side's case, and it is often impossible to determine which side has been prejudiced more severely. *Doggett,* —— U.S. at ——, 112 S.Ct. at 2693, 120 L.Ed.2d at 531. This factor is therefore not dispositive, even though its importance increases with the length of delay. *Id.*

■ When the non-availability of a witness is the basis of the claim of prejudice, appellant must show: the witness was unavailable at the time he was tried; the testimony that would have been offered was relevant and material to the defense; and due diligence was exercised in an attempt to locate the witness for trial. *Swisher v. State,* 544 S.W.2d 379, 382 (Tex.Crim.App.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977); *McCarty v. State,* 498 S.W.2d 212 (Tex.Crim.App.1973). Appellant has made no showing that he exercised due diligence to locate the missing witness. Having failed to satisfy this third prong, we give no weight to this contention.

Applying the balancing test of *Barker v. Wingo,* we conclude appellant was not denied his right to a speedy trial. The State pursued appellant with reasonable diligence from his indictment to his arrest. The delay in his arrest was substantially attributable to

appellant's evasive actions which gave rise to the inference that appellant knew of the indictment. Appellant failed to make any showing that he exercised diligence in attempting to locate potentially exculpatory witnesses. We overrule points of error one and two.

■■■ In his third point of error, appellant contends the enhancement provisions of the Texas Penal Code are unconstitutional as applied in that they do not afford fair or adequate notice of the potential penalty facing him if convicted. Tex. Const. art. I § 10. If read together, the effect of the enhancement provisions, specifically sections 1.03(b), 12.41, and 12.42, are unclear and unconstitutional as applied. Tex.Penal Code Ann. §§ 1.03(b), 12.41 and 12.42 (Vernon 1974). The pertinent provisions provide:

> The provisions of Titles 1, 2, and [[1] of this code apply to offenses defined by other laws, unless the statute defining the offense provides otherwise; however, the punishment affixed to an offense defined outside this code shall be applicable unless the punishment is classified in accordance with this code.

Tex.Penal Code Ann. § 1.03(b) (Vernon 1974).

> [A]ny conviction not obtained from a prosecution under this code shall be classified as ... [a] 'felony of the third degree' if confinement in a penitentiary is affixed to the offense as a possible punishment[.]

Tex.Penal Code Ann. § 12.41(1) (Vernon 1974)

> If it be shown on the trial of a second-degree felony that the defendant has been once before convicted of *any* felony, on conviction he shall be punished for a first-degree felony.

Tex.Penal Code Ann. § 12.42 (Vernon 1974) (emphasis added).

Appellant was convicted of delivery of amphetamine, a second-degree felony under the Texas Controlled Substances Act. Tex. Health & Safety Code Ann. §§ 481.103(a)(3), 481.113 (Vernon 1992). The indictment recited a prior conviction for the same offense.

A conviction under the Controlled Substances Act may be enhanced in accordance with section 12.42 of the Penal Code. Tex. Health & Safety Code Ann. § 481.107(f) (Vernon 1992). Accordingly, a second-degree felony under the act may be punished as a first-degree felony if the defendant has been previously convicted of any felony. Tex.Penal Code Ann. § 12.42(b) (Vernon 1974). The Controlled Substances Act calls into play section 12.42 only, making the potential punishment abundantly clear. Tex. Health & Safety Code Ann. § 481.107(f) (Vernon 1992).

Further, the court of criminal appeals has resolved any uncertainty that may have existed regarding the operation of sections 1.03(b), 12.41 and 12.42 to enhance convictions under the Controlled Substances Act. *Childress v. State,* 784 S.W.2d 361, 365 (Tex. Crim.App.1990). Section 12.42 can be triggered by the application of section 1.03(b). Tex.Penal Code Ann. § 1.03(b) (Vernon 1974). Section 1.03(b) makes applicable the code punishment provisions to "offenses defined by other laws, unless the statute defining the offense provides otherwise." *Id.* The Controlled Substances Act does not provide otherwise, in fact it explicitly incorporates the provisions of section 12.42 as noted above. Tex.Health & Safety Code Ann. § 481.107(f) (Vernon 1992). The "however" proviso of section 1.03(b) does not speak to the subject of enhancement of punishment. *Childress,* 784 S.W.2d at 364. It does not exclude operation of section 12.42 to any offense not defined in the Penal Code and not punishable in accordance with the Penal Code Classifications. *Id.* In addition, the court explicitly stated a primary conviction for an offense, classified by the Controlled Substances Act as a second-degree felony, can be treated as such for purposes of enhancement under section 12.42. *Id.* at 365. *Accord, Branch v. State,* 833 S.W.2d 242, 245 (Tex.App.—Dallas 1992, pet. ref'd). Therefore, proof of a prior felony conviction authorizes enhancement under section 12.42(b). *See Childress,* 784 S.W.2d at 366.

The court went on to explain section 12.41 applies only to offenses not classified in ac-

---

1. Sections 12.41 and 12.42 are contained in Title 3.

cordance with the Penal Code and is inapplicable when the punishment for an offense is classified in terms consonant with the punishment provisions of the Penal Code. *Id.* at 365. Classifications of the Controlled Substances Act are in accord with the Penal Code, making section 12.41 inapplicable. *Id.*

Appellant was convicted of delivery of a controlled substance, a second-degree felony. TEX.HEALTH & SAFETY CODE ANN. § 481.113 (Vernon 1992). His prior conviction was for the identical offense. *Id.* Whether one follows the direct route provided by the Controlled Substances Act or the course directed by *Childress,* section 12.42 applies to enhance appellant's second-degree felony conviction to a first-degree felony. TEX.HEALTH & SAFETY CODE ANN. § 481.107(f) (Vernon 1992); TEX.PENAL CODE ANN. § 12.42 (Vernon 1974). We find no error and overrule appellant's third point of error.

■ In his fourth point of error, appellant contends the original indictment was never technically presented because the judge who received it had not taken the oath of office. In addition, appellant asserts the indictment, as amended August 20, 1992, was time barred by the statute of limitations because it failed to allege facts tolling the statute of limitations. Further, the amendment invoked the notice requirements of the Texas Constitution. TEX. CONST. art. I, § 10.

■ Appellant complains the original indictment was never technically "presented" because the judge, sitting as a former judge, had never taken the oath of office. Appellant's claim is untimely. When a judge holds office under color of title by appointment, his acts are conclusive and cannot be attacked in a collateral proceeding even if he lacks the necessary qualifications and is incapable of legally holding the office. *Texaco, Inc. v. Pennzoil,* 729 S.W.2d 768, 854 (Tex.App.— Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. denied,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988). The qualifications of a judge can be attacked only through a *quo warranto* proceeding. *Id. See also Keen v. State,* 626 S.W.2d 309 (Tex.Crim.App.1981); *Archer v. State,* 607 S.W.2d 539 (Tex.Crim. App. [Panel Op.] 1980), *cert. denied,* 452 U.S. 908, 101 S.Ct. 3037, 69 L.Ed.2d 410 (1981).

The State is an indispensable party in a *quo warranto* proceeding which must be brought in the State's name. *Texaco,* 729 S.W.2d at 854 (*citing Lewis v. Drake,* 641 S.W.2d 392 (Tex.App.—Dallas 1982, no writ)). Public officers should be free to perform their duties without their authority questioned incidentally in litigation between other parties. *Texaco,* 729 S.W.2d at 854. They should not be required to defend their authority unless a proper legal officer of the State has determined a serious question exists which deserves judicial consideration. *Id.*

Furthermore, appellant cites no authority for the proposition that former judges are required to take the oath of office. *See id.* at 855. Absent a showing to the contrary, it will be presumed that the assignment was properly made in accordance with all statutory requirements. *Id.* (citing *Buchanan v. State,* 471 S.W.2d 401 (Tex.Crim.App.1971), *cert. denied,* 405 U.S. 930, 92 S.Ct. 984, 30 L.Ed.2d 804 (1972)). *See also Tex. Ass'n of Bus. v. Air Control Bd.,* 852 S.W.2d 440, 478 (Tex.1993) (Gammage, J., concurring and dissenting).

■ Appellant's contention that an amended indictment must plead and prove facts which toll the statute of limitations to avoid being time-barred is not supported by case law and is not contemplated by the Code of Criminal Procedure. After notice to the defendant, a matter of form or substance in an indictment may be amended, at any time before the date the trial on the merits commences, with ten days notice to defendant. TEX.CODE CRIM.PROC.ANN. art. 28.10(a) (Vernon 1989). Nowhere is there a requirement to plead tolling facts to permit an amendment, even when the amendment is substantive.

In the instant case, the indictment was amended to change the word "and" to "any." The indictment as amended reads:

> THE GRAND JURORS, for the County of Clay, State of Texas, ... upon their oaths present in and to [the] court ... that [appellant] ... on or about the 26th day of April, 1987, ... did then and there intentionally and knowingly deliver to [complaining witness] a controlled substance,

namely, amphetamine, in an amount by aggregate weight, including *any* adulterants and dilutants, of less than 28 grams....

Clearly the correction of a typographical error was an amendment of form not of substance. It was properly presented to the trial court more than ten days before trial providing proper notice. The notice requirements of the Texas Constitution were satisfied. We overrule appellant's fourth point of error.

Because each of appellant's points of error is overruled, we affirm the trial court's judgment.