The STATE of Texas, Appellant,

v.

Clarence A. OWENS, Appellee.

No. 01–89–00074–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 7, 1989.

Rehearing Denied Oct. 12, 1989.

Discretionary Review Refused
Jan. 17, 1990.

Jim Mapel, Crim. Dist. Atty., James L. Turner, Asst. Dist. Atty., Angleton, for appellant.

Von H. Shelton, Angleton, for appellee.

Before EVANS, C.J., and DUGGAN and HUGHES, JJ.

## OPINION

EVANS, Chief Justice.

The State appeals from an order dismissing an indictment based on a violation of the speedy trial provision of the sixth amendment of the United States Constitution. We affirm.

Appellee, Clarence Owens, was arrested on May 27, 1988. He was incarcerated in the Brazoria County jail for about 223 days before he was indicted on January 4, 1989, on two counts of burglary of a building. On January 6, 1989, appellee filed an application for a writ of habeas corpus, claiming that he was entitled to have the charges against him dismissed because of the State's violation of the speedy trial provision of the sixth amendment of the United States Constitution.

On January 13, 1989, the trial court held a hearing on appellee's application, at which only Owens' attorney and the assistant district attorney testified. At the conclusion of the testimony, the court ordered the indictment dismissed. In support of this ruling, the court found that at least seven months had lapsed between the date of appellee's arrest and the date of the indictment, and that the State had enough information and evidence to indict appellee in June 1988. The court also made additional findings of fact and conclusions of law as follows:

## FACTS

1. The indictment was filed on 4 January 1989;

2. The dates of the offenses as alleged in the indictment are the 25th and 27th days of May 1988;

3. The indictment contains no enhancement paragraph;

4. The Defendant was arrested on 27 May 1988 and remained incarcerated in Brazoria County until at least 25 January 1989;

5. The State agreed a personal bond was proper after the ruling by the Court on 13 January 1989;

6. The Defendant waived, in writing, extradition to the State of North Carolina on 19 January 1989 and was returned to the State of North Carolina 25 January 1989;

7. The Defendant did not execute a personal bond before his return to the State of North Carolina;

8. The Grand Jury of Brazoria County meets at least one time each month during a calendar year;

9. The State of Texas had knowledge of multiple felony convictions of Defendant in the State of North Carolina initially at the time of his arrest and a warrant of arrest from North Carolina was outstanding;

10. The State of Texas had personal contact with a prosecutor in Fayetteville, North Carolina in June or July 1988;

11. The State of North Carolina informed the State of Texas in June or July 1988 they wanted to pursue prosecution of Defendant on their felony charges;

12. The normal amount of time from arrest to indictment in Brazoria County is a month to several months;

13. The State of Texas had sufficient information in possession to seek indictment of the Defendant in May or June 1988;

14. The State of Texas received no additional information between May or June 1988 and January 1989; and

15. Patricia MacBeth was a potential witness for Defendant and it appears her present whereabouts is in the State of North Carolina.

CONCLUSIONS

1. The pre-indictment delay is oppressive to the rights granted Defendant by the 6th Amendment to the United States Constitution and Art. I, Sec. 10 of the Texas Constitution;

2. Actual prejudice has inured to Defendant in the loss of prompt compulsory process to secure the attendance of the witness MacBeth;

3. The reason or reasons, if any, for the delay are in dispute. However, no reason exists on which to justify the pre-indictment delay.

In a single point of error, the State contends that the trial court erred in dismissing the indictment based on a purported violation of the speedy trial provision of the sixth amendment. Under this point, the State argues, in effect, that the trial court abused its discretion because, under the circumstances shown, the seven-month delay could not, as a matter of law, constitute a sufficient delay to violate appellee's sixth amendment protection.

The sixth amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." The time period for measuring the delay may begin upon indictment, upon information, or as in this case, upon an arrest. *United States v. Marion*, 404 U.S. 307, 321, 92 S.Ct. 455, 464, 30 L.Ed.2d 468 (1971).

In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court set out four criteria by which the courts must determine whether a particular defendant has been deprived of his speedy trial right: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Id.* at 530, 92 S.Ct. at 2192.

As to the first criteria, the length of the delay, there is no set time period that will trigger the constitutional speedy trial protection. Whether there has been such an excessive delay must be determined from the particular circumstances of each case. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192.

A delay that can be tolerated for an "ordinary street crime" is considerably less than the time for a serious, complex conspiracy charge. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. The average time from arrest to indictment in Brazoria County is from one month to several months. Here, the indictment charged Owens with burglary of a building, a relatively ordinary "street crime."

Closely related to length of delay is the reason the government assigns to justify the delay. Here, the trial court found that the reasons for the delay, if any, were in dispute, but it also found that no valid reason existed to justify the delay.

Owens' attorney testified he initially believed there was a plea bargain. He said the State dropped the plea bargain when it became aware that Owens had prior convictions in North Carolina. He had several meetings at the district attorney's office, and each time, he asked what the State was going to do with his client. He said the State responded that it was waiting for pen packets from North Carolina in order to enhance the indictment.

The assistant district attorney testified that the case had been complicated because Owens had multiple "holds" from the State of North Carolina, and that the North Carolina authorities had been looking for him for several years. He said that when Owens was first arrested, he obtained a computerized criminal history return that showed appellee had multiple felony convictions in North Carolina, as well as an outstanding warrant. He said that in June 1988, the North Carolina authorities indicated to him they wanted to question Owens and would seek to extradite him to North Carolina. He said the district attorney's office decided to wait for the pen packets, and for the North Carolina authorities to decide what they wanted to do. He sent the offense reports of the burglary to the North Carolina authorities, but received nothing back from North Carolina. After several months, he said his office finally made the decision to indict Owens on the burglary charge.

The assistant district attorney denied he had ever made a firm plea bargain agreement to allow appellee to plead on a misdemeanor charge. He said there were discussions ranging from appellee's pleading guilty to both burglaries, to the State not filing any charges and simply sending Owens back to North Carolina. He denied that Owens' attorney had ever asked for a speedy trial, and he said their discussions had centered around the various options presented after the North Carolina offenses came to light. He admitted he had sufficient evidence to indict Owens in May or June 1988. He said the reason the indictment was delayed was because they were waiting for offense reports and pen packets. He denied this was the sole reason for the delay, saying his office was negotiating with Owens and his attorney to work out an arrangement that would be agreeable to all parties. On cross-examination, he admitted that Owens' attorney had asked him once a month or every other month about indicting his client.

The trial court found that no valid reason existed to justify the seven-month delay, and as the trier of fact, the court acted within the province of its authority. *See Ordunez v. Bean*, 579 S.W.2d 911, 914 (Tex.Crim.App.1979); *Deloney v. State*, 734 S.W.2d 6, 7 (Tex.App.—Dallas 1987, pet. ref'd). The State does not seriously challenge appellee's assertion of the right to a speedy trial. The State's attorney acknowledged that Owens' attorney asked him once a month or every other month about indicting his client, and the evidence is sufficient to show appellee's assertion of his right to a speedy trial.

We move to a consideration of the fourth factor, prejudice to the defendant. Owens testified that he suffered anxiety while awaiting the State's decision about whether to indict, but more importantly, he claims a potential defense witness was lost to him due to the delay. Owens' counsel testified that his client had been prejudiced in three ways: (1) the plea bargain he thought he had was no longer available; (2) he had suffered anxiety because of the delay; and (3) a witness, appellee's girlfriend or common law wife, was no longer available. Owens' attorney testified the missing witness had lived with Owens at a motel in Alvin, that she was originally from North Carolina, and that he did not know where she now lived. Although appellee's attorney said he had never spoken to her personally, he believed she could testify about Owens' whereabouts on the date of the offense. The assistant district attorney admitted he did not know the whereabouts of the potential alibi witness, and he said the authorities in North Carolina had indicated she had returned to that State.

■ To establish actual prejudice, a defendant must show only some prejudice caused by the delay. *Harris v. State*, 489 S.W.2d 303, 308 (Tex.Crim.App.1973). A defendant need only show that the prospective witness was material to the case, not that the witness would have testified favorably to the defense. *Phillips v. State*, 650 S.W.2d 396, 402 (Tex.Crim.App.1983). Thus, it has been held that, if a material witness disappears because of delay, prejudice is shown. *Barker*, 407 U.S. at 514, 92 S.Ct. at 2184.

Balancing the factors set out in *Barker*, we conclude that the trial court did not abuse its discretion in dismissing the indictment for a violation of the speedy trial provision of the sixth amendment. We overrule appellant's point of error.

The judgment of the trial court is affirmed.