ACCEPTED
01-15-00367-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
12/7/2015 7:22:07 PM
CHRISTOPHER PRINE
CLERK

No. **01 - 15 - 00367- CR**

IN THE FIRST DISTRICT COURT OF APPEALS
AT HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

12/7/2015 7:22:07 PM

CHRISTOPHER A. PRINE
Clerk

========================================

# REYNALDO ZAMORA

Appellant

v.

# THE STATE OF TEXAS,

Appellee

==================================================

Appeal from Convictions in Cause Numbers CR 87-0140,
in the 22nd District Court of Hays County, Texas,
Hon. Bruce Boyer, Judge Presiding

==================================================

## BRIEF FOR APPELLANT

==================================================

Respectfully submitted,

Law Office of Alexander L. Calhoun
State Bar No.: 00787187
4301 W. William Cannon Dr., Ste. B-150, # 260
Austin, TX 78749
Tele: 512/ 420 - 8850
Fax: 512/ 233- 5946
Cell: 512/731-3159
Email: alcalhoun@earthlink.net

Oral Argument is Not Requested

## STATEMENT CONCERNING ORAL ARGUMENT

Counsel believes the present case can be decided upon the briefs and that oral argument will not significantly assist the Court in its review of the case.

# TABLE OF CONTENTS

STATEMENT CONCERNING ORAL ARGUMENT ...........................................I

TABLE OF CONTENTS................................................................. ii

CERTIFICATE OF PARTIES.......................................................... iii

INDEX OF AUTHORITIES............................................................iv

STATEMENT OF THE CASE...........................................................1

ISSUE PRESENTED ....................................................................1

STATEMENT OF FACTS ...............................................................1

SUMMARY OF THE ARGUMENT ..................................................12

POINT OF ERROR NUMBER ONE .................................................13

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR SPEEDY TRIAL IN LIGHT OF THE EXTRAORDINARY PASSAGE OF TIME AND STATE'S LACK OF DILIGENCE IN LOCATING APPELLANT DESPITE HIS FREQUENT INCARCERATION.

CONCLUSION AND PRAYER ..........................................................23

CERTIFICATE OF SERVICE ...........................................................24

CERTIFICATE OF COMPLIANCE....................................................25

# CERTIFICATE OF PARTIES

Pursuant to Rule 38.1(a), Tex.R.App. Pro., Appellant presents the following persons who are parties to, or have an interest in the final judgment in this cause, so that the Court may determine whether its members are disqualified or should recuse themselves:

| | |
|---|---|
| Mr.  Reynaldo Zamora,<br>TDCJ #  01989227 | Texas Department of Criminal Justice<br>TDCJ Ellis Unit |
| Mr. Alexander L. Calhoun, App. Atty | 4301 W. William Cannon Dr.,<br> Ste. B-150, # 260, Austin, TX 78749 |
| Ms. Will Holgate, Trial Atty | 5837 B Hiline Road,  Austin,<br>Texas 78734 |
| Mr. Wes Mau,  Dist. Atty | Hays County Government Center,<br>712 South Stagecoach Trail,<br>Ste.2507, San Marcos, TX 78666 |
| Mr.   Brian Erskine, &<br> Raphael Guerrero, Asst. Dist. Attys | Hays County Government<br>712 South Stagecoach Trail, Ste.<br>2507, San Marcos, TX 78666 |
| Hon.  Bruce Boyer Trial Judge | Hays County Government Center,<br>712 South Stagecoach Trail,<br>San Marcos, TX 78666 |

# INDEX OF AUTHORITIES

Constitutions:

Texas Const., Article I, § 10 ...................................................................................13

U.S. Const., Amend. VI .........................................................................................13

U.S. Const., Amend. XIV .......................................................................................13


Cases:

*Barker v. Wingo*, 407 U.S. 514 (1972) .................................... 12, 13, 16, 18, 19, 20

*Cantu v. State*, 253 S.W.3d 273 (Tex. Cr. App. 2008) .............................................13

*Deluna v. State*, 05-10-01339-CR (Tex.App. - Dallas 2012) (unpublished) ..........17

*Doggett v. United States*, 505 U.S. 647(1992)...............................................14, 19, 20

*Ervin v. State*,  125 S.W.3d 542 (Tex.App. - Hous. [1st Dist.] 2002)      , 15, 16

*Gonzales v. State*,  435 S.W.3d 801 (Tex.Cr.App. 2014)...........................18, 19, 20

*Harris v. State*, 827 S.W.2d 949, 956 (Tex.Cr.App. 1992) ....................................14

*Harris v. State*, 986 S.W.2d 619 (Tex.App. - Tyler 1997) .....................................20

*Klopfer v. North Carolina*, 386 U.S. 213 (1967)....................................................13

*Maddux v. State*,  825 S.W.2d 511 (Tex.App.-Hous. [1st Dist.] 1992)...................20

*Moore v. Arizona*,  414 U.S. 25  (1973) ................................................................19

*McGregor v. State*, 394 S.W.3d 90  (Tex.App. - Hous. [1st Dist.] 2012).........13, 14

*Phillips v. State*, 650 S.W.2d 396 (Tex.Cr.App. 1983) ..............................15, 20, 21

*Puckett v. State*, 279 S.W.3d 434 (Tex.App. - Texarkana 2009)..............................20

*Rivera v. State*, 990 S.W.2d 882 (Tex.App. - Austin 1999) ....................................14

*State v. Kuri*, 846 S.W.2d 459 (Tex.App. - Hous. [14th Dist.] 1993) ....................20

*State v. Owens*, 778 S.W.2d 135 (Tex.App. — Hous. [1st Dist.] 1989) ...............21

*State v. Smith*, 76 S.W.3d 541 (Tex.App.- Hous. [14th Dist.] 2002) ....................18

*Zamorano v. State*, 84 S.W.3d 643 (Tex.Cr.App. 2002)........................................14

TO THE HONORABLE JUDGES OF THE COURT OF APPEALS:

COMES NOW, before the Court, Appellant, by and through his attorney of record, and pursuant to Rule 38.1, Tex.R.App.Pro., files this brief on appeal, and would show the Court as follows:

## STATEMENT OF THE CASE

Appellant was charged with the felony offense of Aggravated Kidnaping. [Clerk's Record ("C.R."): 6]. The jury convicted him of the charged offense. [C.R.: 138 - 140]. Sentencing was held to the trial court, which assessed a punishment at 60 years confinement in the Texas Department of Criminal Justice (TDCJ). [C.R.:139].

Pursuant to a motion for extension due to an incomplete record, this brief will be timely if filed by December 7, 2015.

## ISSUE PRESENTED

Point of Error Number One

**THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR SPEEDY TRIAL IN LIGHT OF THE EXTRAORDINARY PASSAGE OF TIME AND STATE'S LACK OF DILIGENCE IN LOCATING APPELLANT DESPITE HIS FREQUENT INCARCERATION.**

## STATEMENT OF FACTS

The present case arises from the denial of Appellant's motion for Speedy

Trial due to the delay in prosecution of his 1987 charge for Aggravated Kidnaping in Hays County, Texas. Appellant did not appear for trial in August 1987 after which the case lay dormant until 2013 when Appellant was finally arrested on a warrant issued on the case by Hays County.

A. The Speedy Trial Hearing

Following his apprehension in 2013, Appellant filed a Motion to Dismiss for Lack of a Speedy Trial. [C.R.: 19 - 25]. Appellant testified as the sole witness at the hearing on his motion. Appellant's date of birth was March 28, 1954. [2 R.R.: 8]. In 1987, after the charges arose, he had been in a car accident resulting in a 52-day coma. [2 R.R.: 9 - 10; 3 R.R.: 37]. The resulting brain injuries from the coma affected his memory of events. [2 R.R.: 9 - 10; 3 R.R.: 38]. He had not shown up for trial in August 1987 because he had now known about the trial setting, a residual effect of his injuries. [2 R.R.: 10].

Appellant was subsequently arrested in Maverick County in 1992 for Conspiracy to Possess Marijuana. [2 R.R.: 11, 12, 30 - 31; 3 R.R.: 18 - 19]. He was identified in the booking records under both his brother's name, "Enrique Jimenez Mata," a Mexican national, as well as his own name "Reynaldo Ybarra Zamora." [3 R.R.: 47; SX: 13]. When Appellant was arrested, the authorities found in the car, 3 false identification documents which belonged to his brother.

[2 R.R.: 31; 3 R.R.: 24; 3 R.R.: 20, 44 - 45]. He was released from jail because the authorities suspected him of being his brother, who was an illegal alien. [2 R.R.: 11, 12, 30 - 31; 3 R.R.: 46]. The sheriff's department released him to the border patrol, which drove him to the international bridge and instructed him to return to Mexico. [2 R.R.: 11; 3 R.R.: 45].

Appellant was again arrested by the Austin Police Department for Indecent Exposure in 2001. [3 R.R.: 33, 51]. Documents submitted by the State, a police department "Press Release" of the arrest, State's Exhibit 15, and an APD offense report, State's Exhibit 31 - Exhibit F, reflect Appellant was arrested under the name of "Reynaldo Zamora" with a date of birth of "3/28/1958." [3 R.R.: SX 15, 31 (Attachment F)]. He was convicted and placed on probation. [8 R.R.: SX 31 (Attachment G)]. This probation was eventually revoked in October 2005 and he was sentenced to 30 days in the county jail. [8 R.R.: SX 31 (Attachment K)].

Also in 2001, Appellant was arrested and incarcerated in Franklin County, Kentucky. [2 R.R.: 13 - 14, 22]. The booking sheet listed among his charges a fugitive warrant. [2 R.R.: 14; SX 14]. He plead guilty to the local offense served a 5 ½ month sentence. [2 R.R.: 15]. Despite the out-of-state detainer, the local authorities released him from custody after Hays County did not seek extradition.

[2 R.R.: 15;  3 R.R.: 29 - 30, 47 - 48].

Appellant then returned to Texas from Kentucky.    [3 R.R.: 49].   While living in Austin, Texas, he checked with the Travis County Sheriff's Office for outstanding warrants and learned that there were no warrants from Hays County. [2 R.R.: 16 - 17;  3 R.R.: 50 - 51].

In 2002, Appellant was again arrested in Maverick County for the 1992 charge.   [2 R.R.: 17 - 18].   He was found guilty after a trial and sentenced to 12 years imprisonment.   [2 R.R.: 18 - 19; DX 1 & 2].   He was paroled from prison in 2005.   Prior to his release, the Board of Pardons and Paroles  checked for outstanding detainers and he "came up clean."   [2 R.R.: 20].

After being released from prison, Appellant renewed his driver's licence without incident.   He was aware that the Department of Public Safety routinely ran warrant checks when renewing driver's licences.   [2 R.R.: 20 - 21;  3 R.R.: 50].

Appellant was again arrested in Austin in 2007.  [3 R.R.: 34].    State's Exhibit 28, an Austin Police Department Press Release reflects he was arrested under the name "Reynaldo Zamora" with a date of birth of "3/28/1954."   [3 R.R.: 32;  8 R.R.: SX 28].   An offense report from the Texas Attorney General's Fugitive Apprehension Unit  noted the existence of a 1986 Hays County

Aggravated Kidnaping case, but misstated that it resulted in a conviction and sentence.  [8 R.R.: 31 (Attachment I)].

Appellant's parole on the Maverick County conviction was revoked in 2008 and he was again incarcerated in the state prison system.   [3 R.R.: 33].  He was paroled again in 2010.  The Board of Pardons and Paroles again reviewed him for detainers, found none, and released him.  [2 R.R.: 20].

On September 7, 2013 Appellant was finally  arrested by Hays County for the 1987 charges.  He was appointed an attorney on October 23 and the two met in jail a week later, on October 30, 2013.   He was subsequently returned to TDCJ for   four months, after which he was again returned to Hays County to face charges.  [2 R.R.:  27].

The State submitted several documents in order to demonstrate that Appellant has utilized several aliases and dates of birth over the years.   State's Exhibit 1, a 1972 judgment of conviction in Guadalupe County, and State's Exhibit 2, a related 10-print card reflect that Appellant's first name was spelled as "Ray."   [3 R.R.: 10, 11:  8 R.R.:  SX 1 & 2].

State's Exhibit 3, a Guadalupe County magistration form, dating to 1978, and State's Exhibit 4, a 1978 Guadalupe County judgement of conviction  also listed his name as "Raynaldo Ybarra Zamora."   [8 R.R.:  SX 3].  State's Exhibit

6, a 10-print card from TDCJ identified him as "Reynaldo Zamora" with an aka as "Ray" but stated his date of birth as "3-25-54." [8 R.R.: SX 6].

State's Exhibit 9, his Hays County waiver of arraignment in the present case listed him as "Reynaldo Zamora." [8 R.R.: SX 9].

State's Exhibit 11, photos purportedly of Appellant by the Maverick County Sheriff's Department dating to 1992 listed the individual as "Enrique Mata Jimenez" with a date of birth of "12-21-1958." An accompanying indigence form for the Maverick County case recited Enrique Mata Jimenez as the defendant and was purportedly signed by Mata. [8 R.R.: SX 12]. State's Exhibit 13, a Maverick County jail print out, listed Enrique Jiminez Mata" as an escapee. Notably the document also listed the "Reynaldo Ybarra Zamora" as an alias.

Three identification cards seized by Maverick County during Appellant's 1992 arrest, a Mexican driver's licence, a Texas driver's licence, and a State of Texas certificate of birth, bearing the name "Reynaldo Ybarra Zamora" with a date of birth of 3/28/54" were admitted.[1] [3 R.R.: 24; 8 R.R.: SX 16].

State's Exhibit 14, a "News Release" from Franklin County, Kentucky law enforcement listed Appellant as "Ray Ybarra Zamora." It also noted that he was a "fugitive" for which no bond was authorized. [8 R.R.: SX 14].

---

[1] The Mexican ID spells Appellant's middle name as "Ibarra" but is otherwise consistent

REYNALDO ZAMORA v. STATE OF TEXAS: NO. 01- 15 -00367-CR

State's Exhibit 18, booking photos from Appellant's re-arrest in Maverick County identified him as "Reynaldo Ybarra Zamora" with a date of birth of "3/28/1954." [3 R.R.: 26; 8 R.R.: SX 18]. The judgment of conviction for his trial identified him under the name of "Reynaldo Ybarra Zamora" with an aka as "Enrique Jimenez Mata." [3 R.R. 27; 8 R.R.: SX 19]. The accompanying Maverick County 10-print card related to the judgment, however, spelled his name as "Raymundo Ybarra Zamora" with a date of birth of "3/28/1954." [3 R.R. 27; 8 R.R.: SX 20]. A Franklin County law enforcement "News Release" dating to a June 2003 arrest, State's Exhibit 23, identified Appellant as "Ray Ybarra Zamora." [3 R.R.: 28 - 29; 8 R.R.: 23].

State's Exhibit 25, a State of Texas Pardons and Parole notice of offender release, dated October 5, 2005 identified Appellant, "Reynaldo Ybarra Zamora" with a date of birth of "3/28/54" as an impending parolee. [3 R.R.: 31; 8 R.R.: SX 25].

State's Exhibit 30, a second State of Texas Pardons and Parole notice of offender release, dated May 25, 2005 again identified Appellant as "Reynaldo Ybarra Zamora" with a date of birth of "3/28/54."

State's Exhibit 31, a written response with documentary attachments, to

with the Texas documents.

Appellant's Speedy Trial motion, was also admitted. [3 R.R.: 8 - 9; 8 R.R.: 31].

Appellant contended that his defense was premised upon an alternative suspect to the kidnaping – his brother – supported by witnesses who could have provided alibis of his whereabouts in the time period that the offense had occurred. He had a younger half-brother, "Enrique Mata Jiminez" – they shared the same father, but different mothers – who lived in the Piedras Negras, Mexico. [2 R.R.: 12 - 13; 2 R.R.: 28 - 29]. The brothers resembled one another. [2 R.R.: 25]. Jiminez, a Mexican national, and would use Appellant's ID while in the United States. [2 R.R.: 28 - 29]. Jiminez operated Appellant's septic business when Appellant worked out-of-state and used his driver's licence to drive the dump truck which used in the business. [2 R.R.: 25 - 26]. Appellant believed that his brother had committed the offenses using Appellant's identity while Appellant was working out-of-state. [2 R.R.: 26]. Appellant denied owning a white Corvette, the suspect vehicle in the case, but his brother had owned such a vehicle. [3 R.R.: 40 - 41]. Appellant had lost contact with his brother over the years; he not been able to locate him for some period of time. [2 R.R.: 12 - 13]. His inquiries had proven fruitless because no one in the family knew of his brother's whereabouts. [2 R.R.: 13].

There were several other witnesses with whom he had worked who could

have testified to his being out-of-state during the relevant time period but who were no longer available as witnesses. In 1986 - 1987, Appellant had been working for a long time employer, Dr. Darryl Havert, through whom he met another individual, Colonel Sanders. [2 R.R.: 21, 23; 3 R.R.: 37, 40]. He believed that he had been working for Sanders out-of-state at the time of the offense in late 1986. [2 R.R.: 22]. Appellant learned that Sanders had died in 2007. [2 R.R.: 21 - 22; 3 R.R.: 35 - 36]. Another witness, Dr. Havert, had died from a stroke in 2007. [2 R.R.: 23 - 24; 3 R.R.: 36]. Havert would have been able to testify about Appellant's whereabouts during the period which the charges arose. Havert owned two small airplanes and provided transport for Appellant to and from Colorado as well as Kentucky, where Havert owned a ranch on which Appellant worked. [2 R.R.: 23]. There had also been a private pilot, employed by Havert to fly the planes between San Antonio and Kentucky, who could have testified on Appellant's behalf, but whose name Appellant had forgotten over time. [2 R.R.: 24 - 25].

The trial court took the matter under advisement, and ultimately denied the motion, noting on the docket sheet that the delay was "attributable to Δ's own actions, lack of previous request for Speedy Trial; lack of prejudice to Δ under all attendant circumstances." [C.R.: 155].

On the morning of trial, just before voir dire, the State advised the trial court of additional evidence not disclosed during the pre-trial Speedy Trial hearing. The prosecutor made a proffer that he had learned from the district attorney's office officer manager that she had received a fax from the parole department in 2010, inquiring into the status of the pending case. [4 R.R.: 17 - 18]. The office manager reported the fax to the chief of the family justice division – not the same prosecutor as the one making the proffer. The DA's Office, which was attempting to locate and re-create a case file, did not respond to TDCJ and Appellant was released from prison. The DA's Office did not re-create a file until Appellant was arrested in 2013 on an "active warrant." [4 R.R.: 18 - 19].

Appellant re-urged the motion to dismiss, which the trial court denied. [4 R.R.: 22 - 25].

B.     Trial on the Merits

The evidence at trial showed nine-year-old G.G. and her friend, D.S. were abducted on December 20, 1986 in Buda, Hays County, Texas. While walking to a neighborhood friend's home, the suspect drove up in a white Corvette, identified himself as the friend's uncle, and asked where she lived. [5 R.R.: 108 - 109; 6 R.R.: 22 - 23, 28]. He asked for help locating the house and when the girls

expressed hesitancy in getting into his car, he identified himself as "Reynaldo Zamora." [6 R.R.: 28 - 31, 74, 76 - 77, 80 - 81]. The girls got into the car and tried to find the house. [6 R.R.: 32]. While driving through the neighborhood, the suspect announced he needed gas and drove the girls to a gas station along the highway, where he bought D.S. a hamburger. [5 R.R.: 109, 111; 6 R.R.: 34 - 37, 38]. He drove them back to their neighborhood. D.S. exited the car, but as G.G. started to exit, the suspect pulled her back in and drove off. [5 R.R.: 109; 6 R.R.: 44 - 45]. He ultimately drove G.G. to a spot along the side of the highway, parked and fondled her breast and crotch, then drove her back. [6 R.R.: 49 - 51]. He dropped G.G. off at the school bus stop and she ran home and related the incident. [6 R.R.: 52 - 57].

Appellant was identified as a suspect during the investigation. Members of the Hays County Sheriff's Office went to Appellant's house with an old unexecuted warrant, and while searching the home found Appellant hiding in the shower. [5 R.R.: 170 - 174; 186; 8 R.R.: SX 12 (Michael Dees Deposition)].

The officers assigned to the investigation took D.S. and G.G. on a drive by of Appellant's house following Appellant's arrest, at which time both girls identified the white Corvette parked in the drive way as the suspect's vehicle. [5 R.R.: 177 - 179; 6 R.R.: 58].

The girls could not initially identify a suspect. [5 R.R.: 190]. After Appellant's arrest, they were again shown a lineup and each selected his photograph. [5 R.R.: 143, 182 - 183, 193; 6 R.R.: 59 - 60; SX 12 (Michael Dees Deposition)].

Records of Appellant's credit card matched records of a purchase made at the gas station convenience store where the suspect allegedly made a purchase. [5 R.R.: 77 - 81, 194 - 196; SX 9].

After Appellant was arrested, he posted bond and was released from jail. [5 R.R.: 66 - 67; 6 R.R.: 95 - 97]. He did not appear for the August 1987 trial date. [5 R.R.: 71 - 72, 74].

The parties stipulated that over passage of time, the State had lost numerous items of evidence, including: photographs, hair and fingerprint samples, photos of the vehicle as well as the vehicle itself, recorded witness statements, the gas ticket and photos of Appellant. [5 R.R.: 149 - 150; SX 13]. They also stipulated that hair samples taken from the girls and subjected to microscopic analysis of hair samples taken from the corvette did not have matching characteristics. [5 R.R.: 151].

The jury convicted Appellant of Aggravated Kidnaping. [7 R.R.: 56]. The punishment phase was held to the trial court. The court rejected Appellant's

request for a affirmative finding on the issue of "safe release" and assessed a sentence of 60 years imprisonment. [7 R.R.: 93 - 95].

## SUMMARY OF THE ARGUMENT

1. The trial court erred in denying Appellant's motion to dismiss the case due to the violation of his right to Speedy Trial by incorrectly weighing the relevant factors under *Barker v. Wingo*, 407 U.S. 514 (1972). The testimony and documentary evidence developed in the Speedy Trial hearing reflected that while Appellant had not appeared for the 1987 trial date, and not clearly asserted his right to a Speedy Trial at that time, in the intervening years, he was frequently incarcerated in Texas, either in TDCJ, or in county jails under his own name and date or birth, or was held out-of-state under a Texas detainer, but not extradited by the State. Further, evidence was presented which demonstrated the prosecution ignored a direct inquiry by parole officials regarding Appellant's fugitive status. The State's lack of efforts to locate and bring Appellant to trial, given the passage of years, significantly outweighs Appellant's lack of assertion of his right. Additionally, the trial court failed to presume prejudice given the number of years in which the State did not seek to apprehend Appellant. In the alterative, the trial court erroneously concluded Appellant had not shown prejudice despite testimony of missing and unavailable witnesses. The State's lack of diligence, coupled with

the demonstrated prejudice outweigh the sole *Barker* factor in favor of the State.

## GROUND FOR REVIEW

Ground for Review Number One

**THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR SPEEDY TRIAL IN LIGHT OF THE EXTRAORDINARY PASSAGE OF TIME AND STATE'S LACK OF DILIGENCE IN LOCATING APPELLANT DESPITE HIS FREQUENT INCARCERATION.**

The Sixth Amendment and Fourteenth Amendments to the United States Constitution and Article I, § 10 of the Texas Constitution, guarantee an accused the right to a speedy trial. *Barker v. Wingo*, 407 U.S. 514, 515 (1972); *Klopfer v. North Carolina*, 386 U.S. 213 (1967); *Cantu v. State*, 253 S.W.3d 273, 280 & n.16 (Tex. Cr. App. 2008); *and*, *McGregor v. State*, 394 S.W.3d 90 (Tex.App. - Hous. [1st Dist.] 2012). A court analyzes speedy trial claims on an *ad hoc* basis by weighing and then balancing four factors: (1) length of the delay, (2) reason for the delay, (3) assertion of the right, and (4) prejudice to the accused. *Barker*, 407 U.S. at 530. The inquiry is triggered when the delay between arrest or formal accusation and trial is unreasonable enough to be "presumptively prejudicial." *Cantu*, 253 S.W.3d at 281. The burdens with regard to the factors differ between the parties. While the State bears the burden of justifying the length of delay, the defendant bears the burden of proof that he asserted the right to a Speedy

Trial, and an initial burden of making a *prima facie* showing of potential prejudice. *Cantu*, 253 S.W.3d at 280; *McGregor*, 394 S.W.3d at 112; *and*, *Rivera v. State*, 990 S.W.2d 882, 892 (Tex.App. - Austin 1999). While no one particular factor is talismanic*, Barker*, 407 U.S. at 533, the Court of Criminal Appeals has held that the defendant's burden "'varies inversely' with the State's degree of culpability for the delay"; thus, "the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Cantu*, 253 S.W.3d at 280 - 281; *and*, *McGregor*, 394 S.W.3d at 112 (citing *Cantu*).

### A. Length of Delay

There is no set time period to trigger a Speedy Trial analysis, but Texas courts have applied as a rule of thumb that an eight-month delay is generally sufficient to trigger the inquiry. *Zamorano v. State*, 84 S.W.3d 643, 649 n.26 (Tex.Cr.App. 2002); *and*, *Ervin v. State*, 125 S.W.3d 542, 546 (Tex.App. - Hous. [1st Dist.] 2002) (citing *Harris v. State*, 827 S.W.2d 949, 956 (Tex.Cr.App. 1992)). *Compare*, *Doggett v. United States*, 505 U.S. 647, 652 n. 1(1992) (observing that majority of courts hold delay of one year is sufficient to trigger inquiry). There was evidence that Appellant had absconded from Hays County in

late 1987, subsequently arrested in Maverick County, Texas in 1992, and then either released from custody or escaped. It may be debatable whether this time should count toward the length of the delay, but in essence this period of time is largely irrelevant to the determination of whether the length of the delay was presumptively unreasonable.

What is indisputable is that as of 2002, Appellant was in the custody of the State of Texas, incarcerated in Maverick County, Texas, tried and sentenced to 12 years incarceration in the Texas Department of Criminal Justice.[2] [8 R.R.: SX 18, 19, 20]. He was sentenced under his own name, the same one as he was charged under in Hays County – Reynaldo Ybarra Zamora – and date of birth – 3/28/1954. [8 R.R.: 19, 20]. The evidence was undisputed that Hays County did not seek to arrest him until September 2013 - 11 years later. [2 R.R.: 27]. This delay, dating from 2002 is presumptively unreasonable and sufficient to initiate a Speedy Trial inquiry.

B.    Reason for Delay

Because the State is obligated to expeditiously seek to try a defendant, it

---

[2] The record established that Appellant was in the constructive custody of the Texas two years earlier than this, when he was incarcerated in Franklin County, Kentucky. The State submitted documentary evidence from the Franklin County, Kentucky Sheriff' that Appellant was in the custody of the Franklin County as of May 11, 2000 for charges, including a fugitive warrant for which no bond was authorized. [8 R.R.: SX 14]. Appellant testified he was ultimately released from custody when the

bears the burden of justifying a presumptively unreasonable delay. *Ervin*, 125 S.W.3d at 546 (citing *Phillips v. State*, 650 S.W.2d 396, 400 (Tex.Cr.App. 1983). The Court assesses the reason for the delay against the State depending upon the degree of culpability in failing to provide a Speedy Trial. For neutral reasons, such as a missing State witnesses, the delay is not counted against the State. *Barker*, 407 U.S. at 531. In contrast, a deliberate prolongation weighs heavily against the State, while negligence is also counted against the State, albeit not as heavily as deliberate misconduct. *Barker*, 407 U.S. at 531; *and*, *Ervin*, 125 S.W.3d at 546.

The prosecution as much as conceded negligence on the issue with the trial court. [6 R.R.:19 - 20]. Independent of this, the undisputed facts demonstrated the State, at a minimum, failed to exercise diligence in seeking to prosecute Appellant until 2013. Even conceding the time period in which Appellant was unapprehended by the authorities, it is nonetheless clear that from 2001, he was under the direct or constructive custody of the State. In early 2001, he was in Kentucky custody, but held on an out-of-state detainer; the prosecution offered no explanation for its failure to seek extradition. From 2002 onward, Appellant was consistently in and out of TDCJ, under his own name, and correct date of birth.

State of Texas declined to seek his extradition. [2 R.R.: 15].

And he was repeatedly paroled under this name and date of birth. Again, the State offered no explanation for its failure to obtain his presence for trial. In 2007, he was arrested in Austin under his own name and date of birth. Again, the State offered no explanation for its failure to obtain his presence for trial in Hays County. While contending Appellant was using an alias for this time period, the State's own evidence – documents generated by law enforcement – reflects that that law enforcement was aware of variations in Appellant's name, as well as the possible use of aliases. Yet again, the State offered no explanation of the warrants for Appellant's arrest and whether – or why – they did not include known aliases and spelling variations of his name.

These instances of prosecutorial negligence weigh against the State because the State has the affirmative obligation to make reasonable efforts to bring a defendant to trial, even if he is a fugitive. *Compare, Deluna v. State*, 05-10-01339-CR (Tex.App. - Dallas 2012) (unpublished) (noting that during time period defendant was unapprehended, he had been incarcerated in jail and subject to being located through reasonable diligence).

Also significant, the prosecutor's proffer made on the morning of trial reflected at least one occasion in which the State simply disregarded the opportunity to secure Appellant's presence for trial. Parole officials contacted the

Hays County District Attorney's Office in 2010 inquiring on a detainer, but the office did not respond, resulting in Appellant's release. The context of the revelation – a proffer from information conveyed by another employee – precluded further inquiry into this, but supports an inference that the Parole Department might have contacted the office on earlier occasions prior to Appellant's release from prison. The State's inaction in light of the contact by the Parole Department is not mere negligence - it strides into deliberate misconduct, and should be treated more heavily in the weighing process than the States' lack of diligence.

C.     Assertion of the Right to Speedy Trial

There is no evidence in the reconstructed court file that Appellant filed a request for a Speedy Trial in 1987.   He filed his request to dismiss for lack of a Speedy Trial on August 4, 2014. [C.R.: 19 - 25].  The lack of an initial demand for a Speedy Trial is a factor which counts against a defendant.  *Barker*, 407 U.S. at 531; *and*, *Gonzales v. State*,  435 S.W.3d 801, 810 - 811 (Tex.Cr.App. 2014).   It is not determinative, however, as the Supreme Court has noted that the State bears the ultimate burden of ensuring that the right to due process has been accorded.  *Id*., 407 U.S. at 527.   Accordingly,  "[a] defendant has no duty to bring himself to trial." *Ibid*.  *See also*, *State v. Smith*,  76 S.W.3d 541, 549 (Tex.App.- Hous. [14th

Dist.] 2002) ("A defendant has no duty to bring himself to trial, and the primary burden rests upon the courts and the prosecution to insure that cases are brought to trial."). While the absence of proof in the reconstructed file weighs against Appellant, it must be measured in light of both the State's lack of any efforts to secure Appellant's presence during the years he was incarcerated in TDCJ, coupled with the State's failure to seek Appellant's extradition from Kentucky, as well as the significant delay from the period where it is indisputable that Appellant was in State custody and subject to being brought to trial in Hays County.

D. Prejudice.

As a general matter, the defendant has the burden of making a prima facie showing of prejudice. *Barker*, *supra*. Under circumstances, where the delay is long enough and attributable to the State, it is appropriate to presume prejudice without any specific prima facie showing by the defendant. *Doggett,* 505 U.S. at 657; *and*, *Gonzales,* 435 S.W.3d at 812 ("In certain instances, the length of delay may be so excessive that it presumptively compromises the reliability of a trial in ways that neither party can prove or identify. . . . In such instances, the defendant is absolved from the requirement to demonstrate prejudice.") (internal quotations omitted). *See also*, *Moore v. Arizona,* 414 U.S. 25, 26 (1973) ("*Barker v. Wingo* expressly rejected the notion that an affirmative demonstration of prejudice was

necessary to prove a denial of the constitutional right to a speedy trial."). Presumptive prejudice occurs in the context of the length of the delay coupled with the State's negligence. In *Doggett*, the Court applied a presumption of prejudice where the between indictment and apprehension lasted 8 ½ years, " six times as long as that generally sufficient to trigger judicial review . . ." *Id*., 5905 U.S. at 658.

In Appellant's case, he was in constructive custody in Kentucky as of 2001, but the State did not seek his extradition at that time. He was in the custody of the State of Texas as of 2002, but the prosecution did not seek a bench warrant at that time, or for any of the periods in which he was in a Texas prison. In fact, as divulged by the prosecutor on the morning of trial, the Texas Board of Pardons and Paroles actually contacted the office in 2010 to ascertain the Appellant's status in Hays County, but the District Attorney's Office failed to take any action. He was not arrested on a warrant from Hays County until 2013. This is well beyond the time that the Supreme Court found sufficient to presume prejudice in *Doggett*, *supra*.

In the alternative, even if the presumption of prejudice does not apply in this particular case, Appellant established a sufficient *prima facie* showing of prejudice to which the State failed to rebut. A defendant need not show actual prejudice,

however. *Phillips*, 650 S.W.2d at 401; *Puckett v. State*, 279 S.W.3d 434, 437 (Tex.App. - Texarkana 2009); *Rivera*, 990 S.W.2d at 892; *Harris v. State*, 986 S.W.2d 619, 625 (Tex.App. - Tyler 1997); *and*, *State v. Kuri*, 846 S.W.2d 459, 467 (Tex.App. - Hous. [14th Dist.] 1993). This follows from the difficulty, as a result of excessive delay, for either party to prove or identify the way in which the reliability of trial has been compromised by the passage of time. *See Doggett*, 505 U.S. at 655; *and*, *Gonzales*, 435 S.W.3d at 812. Where a witness dies or disappears during a delay, the prejudice is obvious. *Barker*, 407 U.S. at 532. This Court has explained that in the case of a missing witness, "[t]o show prejudice, a defendant need only show that the prospective witness was material to the case, not that the witness would have testified favorably to the defense." *Maddux v. State*, 825 S.W.2d 511, 517 (Tex.App.-Hous. [1st Dist.] 1992, *rev'd on other grounds*, 862 S.W.2d 590 (Tex.Cr.App. 1993)) (citing *Phillips*, 650 S.W.2d at 402; *and*, *State v. Owens*, 778 S.W.2d 135, 138 (Tex.App. — Hous. [1st Dist.] 1989)).

In the present case, Appellant made a *prima facia* showing of prejudice. He testified about a plausible alternative suspect whose whereabouts were unknown by the time of trial. He also advised of three potential material witnesses who could possibly have provided alibis for the time period in question. Two were dead, and one, the pilot employed by Havert, was unknown and plainly unlocatable due to the

passage of time.    The State addressed none of this evidence at the hearing.

        E.      The balance of the Speedy Trial Factors weighs in favor of reversing the trial court's order denying the motion to dismiss.

This court balances the relevant factors of a Speedy Trial claim on a *de novo* basis. *Gonzales*, 435 S.W.3d  at 809; *and*, *McGregor*, 394 S.W.3d at 112.  The trial court made not specific fact-findings, but concluded Appellant had failed to make a showing on three *Barker* factors – invocation of the right, the reason for the delay, and  prejudice.   The court erred on two of these factors – the reason for the delay and prejudice – and so it necessarily applied the *Barker* test incorrectly. While there is no evidence Appellant timely demanded a Speedy Trial, a factor which weighs against Appellant, the State made no efforts to apprehend him in the years following his bond forfeiture, even though he was incarcerated under his own name and date of birth, or under known aliases, since 2001.     Indeed, the unrebutted evidence establishes that the State failed to seek his extradition from Kentucky in 2001 despite the out-of-state detainer, and ignored the Parole Board's inquires in 2010.  This  prolonged negligence coupled with affirmative misfeasance, should weigh heavily when measured against Appellant's own failure to assert his right to a Speedy Trial.

In its cursory conclusion that Appellant had proven no prejudice, the Court

failed to address *Doggett's* injunction that a sufficiently prolonged and unjustified delay obviates the need to demonstrate prejudice. In Appellant's case, assuming a date of 2001, the State's unjustifiable delay in seeking prosecution was 12 years. This was more than sufficient to justify presumptive prejudice under *Doggett*.

Alternatively, the trial court erred in concluding Appellant had not proven prejudice. Appellant presented sufficient and unrebutted *prima facie* proof of prejudice through missing and deceased witnesses. The witnesses – his brother, Havert, Sanders, and the pilot were material insofar as they related to an alternative suspect coupled with Appellant's absence from the state, and were unavailable due to the passage of time. Even in the absence of presumed prejudice, Appellant made a sufficient showing of prejudice to weigh the balance of the *Barker* factors in favor of Appellant.

This Court should conclude the trial court erred in its denial of Appellant's motion to dismiss for violation of his Speedy Trial right.

## Conclusion and Prayer

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully prays this Honorable Court reverse Appellant's conviction, remand the case to the trial court with instructions to dismiss the case for violation of the right to a Speedy Trial, any other such relief to which Appellant may be entitled.

Respectfully submitted,


Law Office of Alexander L. Calhoun
4301 W. William Cannon Dr., B-150, # 260
Austin, TX 78749
Tele: 512/ 420- 8850
Fax: 512/ 233-5946
Cell: 512/731-3159
Email: alcalhoun@earthlink.net


BY:__/S/ *Alexander L. Calhoun*____
        Alexander L. Calhoun
        State Bar No.: 00787187

        Attorney for Appellant, Reynaldo Zamora

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2015, a copy of the above and

foregoing Appellant's Brief has been served upon the Hays County District

Attorney's Office by United States Mail at the following address:

Hays County District Attorney
Hays County Government Center
712 South Stagecoach Trail, Ste. 2507
San Marcos, TX 78666.

/s/ *Alexander L. Calhoun*
Alexander L. Calhoun

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Tex.R.App.Pro. Rule 9.4, I hereby certify that the foregoing appellate brief has been prepared in **Times New Roman** typeface in 14 point type and consists of **6036** words.


　/s/ *Alexander L. Calhoun*
Alexander L. Calhoun